CROSS *v.* GRIFFIN.

1. Specific Performance—Pleading—Sufficiency of Title.
   In a suit for specific performance of a land contract, instituted by the vendee who avers a tender of the amount due and failure of the vendor to execute a sufficient deed, no issue can be raised without averring the claim in the pleadings, that the vendor, not having a good title to the premises, could not forfeit the interest of the vendee for a default.

2. SAME.

> Relief is rightly refused to the assignee of a purchaser's rights under a land contract, which, for a default in stipulated payments, had been forfeited by the vendor taking possession of the premises with notice to the vendee, who afterwards assigned his interest to complainant.

Appeal from Newaygo; Palmer, J. Submitted October 27, 1910. (Docket No. 127.) Decided December 22, 1910.

Bill by Charles B. Cross against Albert E. Griffin and Lucy Griffin, for specific performance of a land contract. From a decree dismissing the bill, complainant appeals. Affirmed.

*Cross, Vanderwerp, Foote & Ross,* for complainant.
*John G. Anderson,* for defendants.

OSTRANDER, J. Complainant, claiming to have succeeded to the rights of the vendee in an executory contract for the purchase and sale of land, files his bill against the vendor and his wife for specific performance. It appears from the contract, which is set out with the bill, and is dated November 30, 1901, that the purchase price was $250, and of this the vendee paid $150. The contract permitted the vendee to occupy the land. The vendor agreed, upon payment of the purchase money and payment of taxes, etc., to execute and deliver a good and sufficient deed, conveying a good and unincumbered title in fee simple. The forfeiture clause contained the following:

"And if he shall, at any time hereafter, violate or neglect to fulfill any of said agreements he shall forfeit all rights or claims under this contract, and be liable to the said party of the first part for damages, and shall also be liable to be removed from the said land in the same manner as is provided by law for the removal of a tenant that holds over after the expiration of the time specified in his lease. And it shall be lawful for the said party of the first

part, at any time after the violation or nonfulfillment of any of the said agreements on the part of the said party of the second part, to sell and convey the said land, or any part thereof, to any other person whomsoever; and the said party of the first part shall not be liable in any way, nor to any person, to refund any part of the money which he may have received on this contract, nor for any damages on account of such sale."

The fourth (third annual) payment of $50 was due November 30, 1904. It is charged in the bill that the vendee on December 1, 1904, offered to pay the vendor $106, if he would then, under the agreement, execute and deliver a deed of the premises, and tendered the vendor $106, which sum the vendor refused, unless the vendee would accept a quitclaim deed of the premises, which he would not do; that thereafter the vendee was ready and always willing to pay the vendor $106 and to perform the agreement on his part whenever the vendor would execute and deliver a good and sufficient deed of the premises. It is charged that on March 4, 1907, the vendee conveyed his interest in the contract and land to complainant, who thereafter gave the vendor notice, in writing, of the acquirement of such interest and forbade the cutting of timber on the land. The notice also contains the statement that an agent of complainant, named in the notice, is authorized to take possession of the land, to tender the balance due on the contract, and to receive a deed of the premises, and that if a conveyance is refused a bill will be filed for specific performance of the contract. It is charged that the contract is in force. The bill is verified. It was answered, a replication was filed, and a hearing was had in open court. The bill was dismissed.

The proofs do not sustain the case made by the bill. We find that the vendee never tendered to the vendor $106, or any other sum, for a conveyance, and the vendor never required or proposed that the vendee should accept a quitclaim deed of the premises. On the contrary, the vendee proposed in November, or December, 1904, to pay

the balance unpaid on the contract and take a deed. The vendor assented, gave orders to have an abstract and deed of the land prepared, when he was told by the vendee that his title was infirm and that he would not accept a deed from him. Thereupon the vendor canceled his order for the preparation of a deed, and desired the vendee to pay him the sum which, by the terms of the contract, was then due and unpaid. This the vendee refused to do, saying he would put no more money into the place. Since then, neither he nor any one for him, or in his right, has paid or tendered any portion of the purchase money. The vendor, as he told the vendee he would do, re-entered peaceably and has been and is now in possession. Of the re-entry and removal of some of his property, the vendee had early notice.

Considerable is said in the briefs about the state of the vendor's title to the land. The recitals in an abstract of title were read into the record, and it appears to be agreed that they correctly indicate the condition of the record title. It is asserted in the brief for the defendant (vendor) that the land had been occupied for 22 years by vendor and his grantors under tax titles. We are referred to no testimony supporting the assertion. The title of the vendor was acquired by quitclaim deed, dated January 29, 1900. His grantor's title originated in a deed given by the auditor general in 1882, for taxes for the years 1875–1879 inclusive. There are other tax titles, as well as the original or government title, outstanding.

Whatever support there may have been for the vendee's assertion that the vendor had not good title, and however the real or apparent condition of the title may have excused the refusal of the vendee to make further payments, and denied to the vendor the right to declare or work a forfeiture, these questions are not raised by the pleadings. The bill does not attack the title of the vendor and no right of the vendee is predicated on a want of title. A single reason is given in the bill for the refusal to make payments. That reason has no support in fact. The

case stands, then, as if the vendee had, without excuse, refused to perform the contract, declaring, also, that he should pay no more. The consequences of such a default are declared in the contract to be forfeiture of all rights thereunder. If it is doubtful whether by the terms of the contract alone such default *ipso facto* forfeited the vendee's rights, there can be no doubt that the vendor, with notice to the vendee, accomplished both an entry and forfeiture before any assignment was made by the vendee to complainant. We are of opinion, therefore, that the circuit court rightly refused complainant relief.

The decree is affirmed, with costs to appellee.

BIRD, C. J., and HOOKER, MOORE, and STONE, JJ., concurred.